# DEFENDANT'S
# EXHIBIT A

# FEDERAL DEFENDERS

### MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104

TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

December 12, 2006

**VIA FACSIMILE: 334-953-6106**

Neal B. Frazier, Captain, USAF
Special Assistant United States Attorney
42 ABW/JA
50 LeMay Plaza South
Maxwell AFB, Alabama 36112-6334

   *Re: United States v. Aaron*

Dear Captain Frazier:

   I am writing to follow up on a discovery request made during our phone conversation last week on December 4, 2006. At that time, Don Bethel and I inquired whether the security patrol car involved in the arrest of Mr. Aaron on July 25, 2006, was equipped with a video camera and, if so, whether there is a tape of the encounter. You stated that some cars are so equipped and that you would check into whether there is a tape of Mr. Aaron's arrest. I would appreciate an update on your inquiry as soon as possible.

   Based upon my investigation of this case and review of the discovery provided, I believe the government is in possession of additional discovery. I am writing to request the following additional materials and information in this case which I believe are discoverable under the standing order and have yet to be provided:

1.    Any information regarding the procedures and methods used for diagnostic testing and calibration of the Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006.

2.    Any and all past and present results of diagnostic testing and/or calibration of the

Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006.

3. Any documentation on the operation and use of the Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006.

4. The curriculum vitae of TSgt. Demond Smith, operator of the Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006.

5. Any log books maintained contemporaneously with the Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006.

6. The Breathalyzer test results of the 20 people who gave breath samples prior to Mr. Aaron's July 25, 2006, testing.

7. The Breathalyzer test results of the 20 people who gave breath samples after Mr. Aaron's July 25, 2006, testing.

8. Any photographs or pictures (including but not limited to 'booking photo') taken at the time of Mr. Aaron's stop, arrest, questioning or detention regarding the alleged July 25, 2006, DUI at Maxwell AFB.

9. The sales receipt tapes from the Class 6 liquor store for the evening of July 25, 2006.

10. The police reports we have received indicate that the stop of Mr. Aaron was initiated as a result of an "anonymous" phone call to Maxwell LED. We request identification of this caller, if known, pursuant to Federal Rules of Criminal Procedure 16(d)(2); the Federal District Court's February 4, 1999, Standing Order on Criminal Discovery; the holdings of *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Giglio*, 405 U.S. 150 (1972); *Kyles v. Whitley*, 514 U.S. 419 (1995); and the Fifth and Sixth Amendments of the United States Constitution.

11. We also request, on Mr. Aaron's behalf, any call logs, transcriptions of phone calls, or any other information you might have from or relating to the July 25, 2006, phone call, documenting the "anonymous" call, the location from which it originated, and/or the party calling.

12. We also have reason to believe that Ms. Savannah Harris, Mr. Aaron's companion at the time he was arrested, wrote a letter to the security police shortly after the incident in July documenting her observations of what had occurred. We would like to have a copy of that letter, together with any notations or documentation concerning when it was received and by whom.

*In Memory: John William Focke, II 1949 - 2001*

Thank you for your assistance.

Sincerely yours,

*Anne Borelli*

Anne Borelli
Federal Defenders

cc:    Kent B. Brunson, Esq.
Assistant United States Attorney
One Court Square
Montgomery, Alabama 36104
FAX: 334-223-7135

# DEFENDANT'S
# EXHIBIT B

# FEDERAL DEFENDERS

### MIDDLE DISTRICT OF ALABAMA
### FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

January 5, 2007

**VIA FACSIMILE: 334-953-6106**

Reese H. Hays III, Lieutenant, USAF
Special Assistant United States Attorney
42 ABW/JA
50 LeMay Plaza South
Maxwell AFB, Alabama 36112-6334

*Re: United States v. Aaron*

Dear Lieutenant Hays:

I am writing this letter to memorialize our phone conversation today respecting defense requests for supplemental discovery. Please correct any inaccuracies or misconceptions.

## I.    INFORMATION AND MATERIALS THAT DO NOT EXIST

1. We asked whether the security patrol car involved in the arrest of Mr. Aaron on July 25, 2006, was equipped with a video camera. You have stated that it was not and that no Maxwell security force cars are so equipped.

2. We asked for the identification of the person who reported the sighting of an allegedly erratically driven vehicle to the Maxwell security forces and/or any materials that might identify the same. You stated that this anonymous informant was a walk-in and is unknown to the Government. You stated that there is no contemporaneous record created by anyone at the LED memorializing this anonymous report.

*In Memory: John William Focke, II 1949 - 2001*

3.    Regarding the letter or written statement of Ms. Savannah Harris, Mr. Aaron's companion at the time he was arrested, recounting her version of events, you stated that you have checked with all the Maxwell security forces officers and that no one has a record of this document.

## II.    INFORMATION AND MATERIALS NOT IN YOUR POSSESSION, BUT AVAILABLE FROM OTHER SOURCES

1.    We requested materials relating to the performance and accuracy of the Draeger machine used to determine Mr. Aaron's alleged BAC. You stated that these are maintained by the Alabama Department of Forensic Sciences in Birmingham and are not available to be copied. Review may be made on site by appointment with the ADFS.

2.    All records of the actual test of Mr. Aaron are also maintained by the ADFS and available from them.

3.    Any information regarding training for administering Draeger testing is also maintained by the ADFS and available from them.

## III.    INFORMATION AND MATERIALS YOU HAVE AGREED TO PROVIDE OR MAKE AVAILABLE

1.    We requested the names of any persons known to have been staffing the LED on July 25, 2006. You stated that at least one of the individuals staffing the LED, who was identified to you as the person who actually took the anonymous informant's report, has left the military. You did not have the name of this person readily available and so you did not provide it to us, but indicated that you would provide it to us.

2.    You indicated that you do not know whether the officers who responded to the scene were dispatched from security headquarters or by radio to a car on patrol. You stated that you would determine how they were dispatched and provide us with any records or tapes of the dispatch if they exist.

3.    You stated that you did not know what training manuals, if any, may be available respecting procedures for DUI stops, but that you would find out if there are any and provide them to us, if so.

4.    You stated that you have custody of the gin bottle allegedly confiscated from Mr. Aaron's car at the time of his arrest and that it is available for viewing by appointment.

**IV     .INFORMATION OR MATERIALS STILL IN DISPUTE**

1.     We requested the curriculum vitae of TSgt. Demond Smith, operator of the Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006.  You maintain that the permit number listed for TSgt. Smith in the discovery materials already provided adequately supplies this information.  We do not agree that this permit number provides adequate information, because it does not inform us as to the date TSgt. Smith became qualified, the specific training he has undertaken to familiarize himself with Draeger administration procedures, or his performance record.

You indicated that you will be in trial next week, but will provide the information listed above in Section III by the end of the week.  We look forward to receiving these materials as soon as you can gather them.

Thank you for your assistance.

Sincerely yours,

*Anne Borelli*

Anne Borelli
Federal Defenders

cc:     Kent B. Brunson, Esq.
Assistant United States Attorney
One Court Square
Montgomery, Alabama 36104
FAX: 334-223-7135

*In Memory: John William Focke, II 1949 - 2001*

# DEFENDANT'S
# EXHIBIT C

# FEDERAL DEFENDERS

## MIDDLE DISTRICT OF ALABAMA
## FEDERAL DEFENDER PROGRAM, INC.
### 201 MONROE STREET, SUITE 407
### MONTGOMERY, AL 36104
TELEPHONE (334) 834-2099
FACSIMILE (334) 834-0353
Website: www.almfd.org

CHRISTINE A. FREEMAN
Executive Director

January 19, 2007

<u>VIA FACSIMILE</u>: 334-953-6106

Reese H. Hays III, Lieutenant, USAF
Special Assistant United States Attorney
42 ABW/JA
50 LeMay Plaza South
Maxwell AFB, Alabama 36112-6334

   *Re: United States v. Aaron*

Dear Lieutenant Hays:

   I am writing this letter to memorialize our phone conversations today and on January 16, 2007, respecting defense requests for supplemental discovery, and to summarize our prior consultations. Please correct any inaccuracies or misconceptions.

## I.   INFORMATION AND MATERIALS PROVIDED

1.   We requested any guidelines or training manuals for DUI stops. You provided an operations manual respecting procedures for DUI stops.

2.   We requested the names of any persons known to have been staffing the LED on July 25, 2006. You stated that at least one of the individuals staffing the LED, who was identified to you as the person who actually took the anonymous informant's report, has left the military. You stated that the name of this individual is Joshua Anderson. We requested a last known address for Mr. Anderson. On further investigation, you discovered and reported to us that Sgt. Anderson is still in the military, is stationed at Maxwell AFB, and will be available for an interview.

*In Memory: John William Focke, II 1949 - 2001*

3.      We requested the curriculum vitae of TSgt. Demond Smith, operator of the
        Breathalyzer used to take a breath sample from Elijah Aaron on July 25, 2006. You
        maintained that the permit number listed for TSgt. Smith in the discovery materials
        already provided adequately supplies this information. We did not agree that this
        permit number provides adequate information, because it does not inform us as to the
        date TSgt. Smith became qualified, the specific training he has undertaken to
        familiarize himself with Draeger administration procedures, or his performance
        record. After further discussion, you provided a copy of certification dated March 6,
        2003, issued by the Alabama Department of Forensic Sciences, indicating that TSgt.
        Smith had completed the class required for operators of the Draeger.


II.     **INFORMATION AND MATERIALS YOU HAVE AGREED TO PROVIDE OR
        HAVE ATTEMPTED TO MAKE AVAILABLE**

1.      You stated that you have custody of the gin bottle confiscated from Mr. Aaron's car
        at the time of his arrest and that it is available for viewing by appointment.

2.      We requested the receipts from the Class 6 store for the evening of July 25, 2006,
        between the hours of approximately 5:00 p.m. and 7:00 p.m. for purposes of
        determining the time at which Mr. Aaron purchased the bottle of gin found in his
        vehicle. You stated that the Class 6 store will not release receipts generally, because
        they contain confidential information such as credit card numbers. You stated that the
        Class 6 store might be able to supply Mr. Aaron's receipt if he either paid by credit
        card or if he has a copy of it himself with the transaction number. You provided the
        phone number for the Class 6 management office at 279-9776.


III.    **INFORMATION AND MATERIALS NOT IN YOUR POSSESSION, BUT
        AVAILABLE FROM OTHER SOURCES**

1.      We requested materials relating to the performance and accuracy of the Draeger
        machine used to determine Mr. Aaron's alleged BAC. You stated that these are
        maintained by the Alabama Department of Forensic Sciences in Birmingham and are
        not available to be copied. Review may be made on site by appointment with the
        ADFS.

2.      All records of the actual test of Mr. Aaron are also maintained by the ADFS and
        available from them.

3.      Any information regarding training for administering Draeger testing is also
        maintained by the ADFS and available from them.


*In Memory: John William Focke, II 1949 - 2001*

## IV.    INFORMATION OR MATERIALS NOT IN EXISTENCE

1.    We asked whether the officers who responded to the scene left directly from the LED or whether they were dispatched by radio.  If the latter, we requested any tapes or other record of the dispatch call.  You indicated that the officers who responded to the scene were dispatched by radio to a car on patrol.  You stated that there is no recording or other record of this call.

2.    We asked whether the security patrol car involved in the arrest of Mr. Aaron on July 25, 2006, was equipped with a video camera.  You have stated that it was not and that no Maxwell security force cars are so equipped.

3.    We asked for the identification of the person who reported the sighting of an allegedly erratically driven vehicle to the Maxwell security forces  and/or any materials that might identify the same.  You stated that this anonymous informant was a walk-in and is unknown to the Government.  You stated that there is no contemporaneous record created by anyone at the LED memorializing this anonymous report.

4.    Regarding the letter or written statement of Ms. Savannah Harris, Mr. Aaron's companion at the time he was arrested, recounting her version of events, you stated that you have checked with all the Maxwell security forces officers and that no one has a record of this document.

Thank you for your assistance.

Sincerely yours,

*Anne Borelli*

Anne Borelli
Federal Defenders

cc:    Kent B. Brunson, Esq.
Assistant United States Attorney
One Court Square
Montgomery, Alabama 36104
FAX: 334-223-7135

*In Memory: John William Focke, II 1949 - 2001*

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 2:06-cr-226-CSC |
| | ) | |
| ELIJAH C. AARON | ) | |

### MOTION TO DISMISS INFORMATION FOR
### BRADY AND DISCOVERY VIOLATIONS

**COMES NOW** the Defendant, Elijah C. Aaron, by and through undersigned counsel, Anne

Borelli, and moves this Honorable Court to dismiss the Information in this case for failure to produce

information and materials requested as discovery under Federal Rule of Criminal Procedure 16,

*Brady v. Maryland*, and this Court's February 4, 1999 Standing Order on Criminal Discovery.  In

support of this Motion, the Defendant would show the following:

### RELEVANT FACTS

At a trial of this matter, the Defendant asserts that the following facts would be established:

On July 25, 2006, Elijah Aaron went to the shoppette on Maxwell Air Force Base accompanied by

Ms. Savannah Harris.  A report was made to security police that an individual somewhere in the

vicinity of the shoppette might be driving while intoxicated.  Police responded to the parking lot of

the shoppette and encountered Mr. Aaron and Ms. Harris.  No police officer observed Mr. Aaron

driving; the car was parked at the time officers responded to the scene.  Mr. Aaron was arrested on

suspicion of driving under the influence of alcohol.

At issue in this case is whether Elijah Aaron was "in actual physical control of a vehicle

while there was .08% or more by weight of alcohol in his blood."  Two matters of material concern

1

in Mr. Aaron's defense are: 1) what the informant actually observed and reported, and 2) whether Mr. Aaron was "in actual physical control of a vehicle" at any time.

Defense counsel has repeatedly requested from the Government information concerning the allegedly "anonymous" informant and any materials, such as video or audio recordings, documenting the arrest. Defense counsel was supplied with documents in discovery alleging that Mr. Aaron was seated in the vehicle at the time police arrived, and that the engine of the vehicle was running. On February 23, 2007, undersigned counsel, cocounsel and an investigator traveled to Maxwell Air Force Base to observe the physical evidence in the case. The defense team was met by Captain Neal Frazier, who informed them that the officers who had made the arrest are now working the night shift and could not be interviewed until the following week. While reviewing the evidence, however, Captain Frazier was informed that TSgt. Armando DaSilva, the supervising officer of the arrest unit, was available to be interviewed.

The defense team then interviewed TSgt. DaSilva respecting the events of July 25, 2006. TSgt. DaSilva reported his recollection of events without prompting. His recollection appeared to be definite and detailed. TSgt. DaSilva recalled that a lieutenant colonel or major made the report to security police. The lieutenant colonel or major reported that he had been exiting the shoppette at the same time Mr. Aaron entered. He reported that Mr. Aaron appeared to be under the influence of alcohol. The reporting officer went across the street to the security police headquarters to report his observations. Additionally, TSgt. DaSilva stated that A1C Rice, one of the responding officers, reported to him that Mr. Aaron was not in the vehicle when police arrived on the scene. Mr. Aaron was arrested for DUI because his companion, Ms. Harris, was allegedly observed seated in the passenger's seat of the vehicle.

2

None of the information provided by TSgt. DaSilva was contained in any of the discovery materials provided to the defense. This information directly contradicts the documentation that was provided to the defense and is exculpatory. According to the discovery materials that were provided, the "anonymous" informant reported either that an intoxicated individual was observed driving at the intersection of Mitchell St. and West Selfridge or that the individual was observed operating a vehicle in the parking lot of the shoppette. TSgt. DaSilva's information would go to show that no one actually observed Mr. Aaron driving at any time.

Furthermore, because Mr. Aaron and Ms. Harris have stated that she drove the car and that Mr. Aaron was not in the car when the police arrived, defense counsel have repeatedly requested information from the Government concerning the identity of the informant or any statement or other documentation of the informant's actual observations. The Government, through Lieut. Reese Hays, denied that the identity of the informant was known and initially informed defense counsel that the person manning the security police information desk on the evening in question had left the military and left no contact information. Lieut. Hays later reported that this person actually has <u>not</u> left the military and is still stationed at Maxwell.

Defense counsel's attempts to obtain information concerning the "anonymous" informant and documentation from the Law Enforcement Desk (LED) to which the report was made are as follows:

On December 4, 2006, cocounsel Don Bethel and the undersigned conferred with Captain Neal Frazier by phone. At that time defense counsel asked whether the patrol car involved in the arrest of Mr. Aaron was equipped with a videocamera. Captain Frazier indicated that he did not know, but that he would find out.

Further investigation led defense counsel to request additional items in a letter faxed to

3

Captain Frazier on December 12. *See* Exhibit A. These included:

a.    A renewal of the request for information concerning videotaping of the arrest;

b.    Any photographs or pictures (including but not limited to 'booking photo') taken at the time of Mr. Aaron's stop, arrest, questioning or detention regarding the alleged July 25, 2006, DUI at Maxwell AFB;

c.    Identification of the anonymous caller who phoned in the report of erratic driving; and

d.    Any call logs, transcriptions of phone calls, or any other information in the Government's possession from or relating to the July 25, 2006, phone call, documenting the "anonymous" call, the location from which it originated, and/or the party calling.

On the following day, December 13, counsel called to discuss these matters prior to the pretrial conference, but was informed that Captain Frazier was out of town for the entire week.

Counsel also called and spoke to A.U.S.A. Kent Brunson on the same date, December 13, to alert him to our request. He referred all matters to Captain Frazier and stated that he would be going out of town on the following day.[1]

On Tuesday, December 19, defense counsel called Captain Frazier three times to discuss the status of our request, but each time was told that Captain Frazier was in the office but unable to answer the phone. Our calls were never returned.

---

[1] A pretrial conference was held on Friday, December 15, 2006. At that time, the undersigned brought to the Court's attention the pending discovery request and counsel's belief that the request would be complied with. Counsel had no reason to believe then that a motion to compel would be necessary to obtain the requested materials.

On Wednesday, December 20, defense counsel again called Captain Frazier. The call was taken by Captain Hansen. Defense counsel was informed that the case had been transferred to Lieutenant Reese Hays, but that Lieut. Hays would be out of town for training until Friday, December 22. Capt. Hansen said that she would attempt to put together the requested discovery, but that she also would be going out of town the next day, Thursday, December 21.

In none of the previous calls or communications prior to December 20 was counsel ever informed that the case had been transferred to another S.A.U.S.A.

A motion to compel was filed on December 20, 2006, respecting outstanding discovery requests that had not been complied with. Document 16. The case, originally set for trial on January 8, 2007, was continued to March 12, 2007. Document 23.

On January 5, 2007, defense counsel called Lieut. Hays concerning outstanding discovery materials. Lieut. Hays represented that the person who made the report to the security police was unknown to the Government. Lieut. Hays further represented that the person manning the LED had left the military and that he did not have this individual's name. Defense counsel sent Lieut. Hays a letter the same day, summarizing the status of discovery requests. *See* Exhibit B. On January 16, 2007, defense counsel again contacted Lieut. Hays about discovery requests. At this time, Lieut. Hays informed defense counsel that the individual assigned to the LED on July 25, 2006, was Joshua Anderson, but that he had no contact information and did not think he could obtain it. Defense counsel requested that he attempt to do so. On January 19, 2007, defense counsel followed up on this request. Lieut. Hays at this time indicated that Joshua Anderson has <u>not</u> left the military and is still stationed at Maxwell Air Force Base. Defense counsel again sent a letter to Lieut. Hays as a final summation prior to withdrawing the then-pending motion to compel. *See* Exhibit C.

Based on the Government's representations that all requested materials had been delivered or were not in the Government's possession, defense counsel withdrew the motion to compel. Document 28. A second pretrial conference was held on February 20, 2007. *See* Document 31. Relying on the Government's representations, defense counsel agreed that discovery was complete. Defense counsel was also informed at the pretrial conference that Captain Frazier has resumed responsibility for the case. The following week, on February 23, 2007, defense counsel interviewed TSgt. DaSilva and discovered that the above-described exculpatory information had been withheld.

Defense counsel has attempted to contact Captain Frazier regarding these matters several times this week. Counsel was informed that Captain Frazier was not in the office on February 27, but was assured that either he or someone with authority to handle decisions would contact defense counsel. No one has. Defense counsel called and left messages on February 28 and March 1, but those calls have not been returned.

## Discussion

Pursuant to Rule 16(a)(1)(E), Fed. R. Crim. P., "the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies of portions of any these items, if the item is within the Government's possession, custody, or control and: (1) the item is material to preparing the defense." This Court's February 4, 1999, Standing Order on Criminal Discovery further mandates the delivery to defense counsel of all material within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Giglio*, 405 U.S. 150 (1972). The United States Supreme Court has recently reiterated the requirements of *Brady*:

> *Brady* . . . held that "the suppression by the prosecution of evidence favorable to an

6

accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S., at 87, 83 S.Ct. 1194. We set out in *Strickler v. Greene,* 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the three components or essential elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S., at 281-282, 119 S.Ct. 1936.

*Banks v. Dretke*, 540 U.S. 668, 691 (2004).

If a dispute arises respecting discovery, the February 4, 1999, Standing Order requires parties to confer and attempt to resolve it among themselves without judicial intervention, if possible. As outlined above, defense counsel has made a good faith effort to resolve discovery issues with the Government. The Government has failed to comply with Rule 16 and this Court's Standing Order on Criminal Discovery. Therefore, the defense moves to dismiss the indictment against Mr. Aaron.

Federal Rule of Criminal Procedure 16(d) addresses the issue of a party's failure to comply with a discovery request. It says, in pertinent part, that "[i]f a party fails to comply with this rule, the court may: (A) order that party to permit the discovery or inspection, . . . or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). The court sanction, in certain circumstances, may take the form of an Order of Dismissal. *United States v. White*, 846 F.2d 678 (11th Cir.1998). Furthermore, the district court's decision concerning the imposition of a Rule 16(d)(2) sanction is a matter committed to the court's sound discretion, and will not be disturbed on appeal absence an abuse of discretion. *United States v. Fernandez*, 780 F.2d 1573, 1576 (11th Cir. 1986).

In formulating the appropriate sanction against the Government for discovery violations, the court must look at: (1) the circumstances surrounding the discovery violation, (2) whether the

7

Government was acting in good faith, (3) the prejudice suffered by the defendant and (4) the feasibility of curing the prejudice through some form of sanction. *United States v. Turner*, 871 F.2d 1574, 1580. (11th Cir. 1989). After reviewing these factors the court may order dismissal of the indictment if it deems the circumstances warrant it. *United States v. White*, 846 F.2d 678, 693 (11th Cir.1998).

The discovery materials that were requested to be produced, pursuant to Rule 16, the Court's Standing Order on Criminal Discovery, the Order of Arraignment of November 8, 2006, and the holdings of *Brady v. Maryland,* 373 U.S. 83 (1963); *United States v. Giglio*, 405 U.S. 150 (1972); and *Kyles v. Whitley*, 514 U.S. 419 (1995), are and have been within the possession, custody or control of the Government. Because undersigned counsel did not received the discovery in a timely manner, she cannot (1) effectively represent and communicate with her client, (2) perform her duty as an officer of the court, (3) adequately prepare pretrial motions and case strategy, and (4) comply with the briefing and trial schedule set forth in the November 8, 2006, Arraignment Order and the Order of December 29, 2006, resetting trial.

The Governement has withheld exculpatory evidence and given misinformation. Prejudice to Mr. Aaron has ensued, because he cannot conduct appropriate investigation or prepare a defense strategy on the basis of incomplete or incorrect information.

The Government has made the decision to pursue criminal charges against Mr. Aaron. It is, therefore, their burden and their responsibility to comply with the rules and law that govern their prosecution. The Government also has the duty, along with defense counsel, to confer before the pretrial conference to resolve any discovery deficiencies, if possible. Their failure to provide defense counsel with the conflicting statement of Tsgt. DaSilva and other requested information and

8

materials has seriously hindered investigation on Mr. Aaron's behalf and makes dismissal of the

indictment an appropriate sanction in this case.

      Dated this 2nd day of March 2007.


                   Respectfully submitted,

                   s/ Anne E. Borelli
                   ANNE E. BORELLI
                   Assistant Federal Defender
                   201 Monroe Street, Suite 407
                   Montgomery, Alabama 36104
                   Phone: (334) 834-2099
                   Fax: (334) 834-0353
                   E-mail:anne_borelli @fd.org
                   AL Bar Code: BOR -016

# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 2:06-cr-226-CSC |
| | ) | |
| ELIJAH C. AARON | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2007, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send notification of such filing to the following:

Kent Brunson, Esq., Assistant U. S. Attorney, One Court Square, Suite 201, Montgomery,

Alabama 36104, and Captain Neal B. Frazier, Lieutenant Reese Hays, and Captain Hansen, Special

Assistant United States Attorneys, 42 ABW/JA, 50LeMay Plaza South, Maxwell AFB, AL 36112-

6334.

Respectfully submitted,

s/ Anne E. Borelli
ANNE E. BORELLI
Assistant Federal Defender
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail:anne_borelli @fd.org
AL Bar Code: BOR 016